UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| ALLA ASHKINAZI, | ) ) ) | 02 Civ. 00002 (RCC) (MHD) |
| Plaintiff, | ) ) | MEMORANDUM & ORDER |
| - against - | ) ) |  |
| TAMIR SAPIR, JOY LUD DISTRIBUTORS INTERNATIONAL, INC., 260/261 MADISON EQUITIES CORP., 2 BROADWAY LLC, 110 CHURCH STREET, LLC, ZAR REALTY MANAGEMENT, ZIRUALE, INC., 100 CHURCH LLC and RUSSIA HOUSE OF KINGS POINT, INC., | ) ) ) ) ) ) ) |  |
| Defendants. | ) ) |  |

**RICHARD CONWAY CASEY, United States District Judge:**

This matter comes before the Court after a long period of stalling, obstruction, and disregard for Court orders on the part of Defendant Tamir Sapir ("Sapir"). Throughout the discovery period Sapir has repeatedly exhibited disrespect for this Court, Magistrate Judge Dolinger (who is overseeing discovery), and the judicial process in general. Judge Dolinger issued a Report and Recommendation ("Report") on March 3, 2005, recommending that the Court impose sanctions on Sapir pursuant to Federal Rule of Civil Procedure 37(b). Sapir filed timely objections to the Report, and Plaintiff responded to his objections. For the following reasons, Sapir's objections are denied and the Court adopts the Report with one modification.

**I.    BACKGROUND**

Alla Ashkinazi ("Plaintiff") commenced this suit in January 2002 against, among others, Sapir, who is the sole shareholder and chief executive officer of Defendants Joy Lund Distributors International, Inc., 260/261 Madison Equities Corp., ZAR Realty Management Corp. ("ZAR

Realty"),[1] Ziruale, Inc., and Russia House of Kings Point, Inc.; the managing member of Defendant 100 Church Street LLC; and a member of Defendants 2 Broadway LLC and 110 Church Street LLC. (Complaint ¶¶ 2-4.)  Sapir, as Plaintiff's employer, signed an employment contract in March 1999 under which Plaintiff was hired as Executive Vice President of the Defendant entities and as administrative manager of the in-house legal department for the entities.  (Id. ¶ 10; id. Ex. B.) Plaintiff alleges that she was fired from her position in May 2001 because of her gender and because she was pregnant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and analogous state and local statutes.  She also asserts breach of contract and unlawful withholding of wages under New York law.

This Court set July 31, 2002 as the deadline for the completion of all discovery.  Plaintiff originally noticed Sapir's deposition for May 28, 2002.  After the parties unsuccessfully attempted to resolve the dispute in mediation, Judge Dolinger, to whom this Court referred the case for general pretrial supervision, extended the discovery deadline to September 13, 2002, based in part on the representation of Sapir's counsel that Sapir was out of the country on business and would not return until September.  Judge Dolinger issued an order on July 11, 2002 that Sapir's deposition was to occur on September 5 and continue day to day until complete.  However, on September 3, 2002, Sapir's counsel wrote to Judge Dolinger to request an adjournment of the deposition on the ground that Sapir's passport had been stolen and Sapir would not be able to return to the United States until early October.  Judge Dolinger ordered Sapir to submit an affidavit stating that his passport was stolen, accompanied by copies of a police report and an application for a replacement passport.

---

[1] Although ZAR Realty Management Corp. is listed as "ZAR Realty Management" in the caption of the complaint, the body of the complaint describes it as an entity incorporated under the laws of New York.  (Complaint ¶ 3.)

On September 4, 2002, Sapir's counsel sent another letter, asking that the deposition be adjourned to October 7 or 8, 2002, and enclosed an unsworn affidavit from Sapir. In the unsworn affidavit, Sapir stated that his passport had been stolen and attached a police report, but did not provide any evidence that he had applied for a replacement passport. In response to the September 4 letter, Judge Dolinger denied the application of a one-month adjournment, and ordered Sapir to appear for a deposition on September 16, 2002. In denying the adjournment, Judge Dolinger reasoned that Sapir had disregarded the order to show proof that he sought a replacement passport, and that a replacement passport would not take a month to obtain if Sapir had immediately sought to obtain one. Judge Dolinger also warned Sapir that failure to appear would subject him to sanctions. The parties agreed to postpone the deposition to September 18, 2002 because of a religious holiday.

The deposition of Sapir did not occur on September 18, 2002 because Plaintiff's attorney withdrew with Plaintiff's consent. Judge Dolinger extended the deadline for the completion of discovery to October 30, 2002, and ordered that Sapir's deposition be held on October 15, 2002. The deposition was held on October 15, after Plaintiff retained a new attorney, but led to a number of discovery disputes, as did the depositions of other witnesses. On January 8, 2003, Judge Dolinger made rulings to resolve those discovery disputes. See Ashkinazi v. Sapir, No. 02 Civ. 00002 (RCC) (MHD), 2003 WL 76986 (S.D.N.Y. Jan. 9, 2003). Judge Dolinger ruled that conversations between Robert Epstein ("Epstein"), former general counsel of ZAR Realty, and Sapir were protected by the attorney-client privilege but that other conversations at which Mark Stein ("Stein"), ZAR Realty's Executive Vice President, was present were not protected. Judge Dolinger also denied Plaintiff's requests for additional discovery and to quash a third-party subpoena. Both sides raised objections

to this Court pursuant to Federal Rule of Civil Procedure 72(a).

In a decision dated July 27, 2004, the Court upheld Sapir's objection that the attorney-client privilege protected the conversations for which Mr. Stein was present, but rejected the other objections. See Ashkinazi v. Sapir, No. 02 Civ. 00002 (RCC) (MHD), 2004 WL 1698446 (S.D.N.Y. July 28, 2004). In September 2004, Plaintiff sought to complete the depositions of Sapir, Epstein, and Stein that were truncated due to the discovery disputes. Sapir's counsel sought a stay of the depositions, arguing that the Court's decision of July 2004 ended discovery. The Court referred the matter to Judge Dolinger to resolve. On September 17, 2004, Judge Dolinger rejected Sapir's argument and ordered that all three depositions were to proceed and were to be completed by October 1, 2004.

Sapir's counsel then sent another letter to this Court stating that he intended to file objections to Judge Dolinger's order of September 17, and requesting that the Court stay discovery. The Court denied the application and noted that Defendants were engaging in obstructionist tactics that, if continued, warranted Rule 37 sanctions. On September 28, 2004, Judge Dolinger ordered that Sapir's deposition take place on October 8, warning that failure to appear would likely result in sanctions. On October 6, Sapir's counsel sent a letter requesting that the deposition be adjourned to October 13, 2004 with the consent of Plaintiff, based on Sapir's purportedly complicated business transactions in Turkey. Judge Dolinger granted the request because Plaintiff consented, but warned that Sapir remained under court order to appear for the deposition.

Despite the repeated warnings, Sapir's counsel sent another letter dated October 12, 2004, requesting that the deposition be postponed to December 8, 2004, again due to Sapir's business affairs abroad. Sapir's counsel wrote to Judge Dolinger:

> In good faith and not withstanding the expense that would have been entailed, Mr. Sapir sought in deference to your Honor's Order to reorganize his travel arrangements and business meetings and events made months earlier and long before the Court's Order. But in view of the short notice, complexity of the business affairs in which he is engaged and the almost certain inability to reconstruct the arrangements all without risk to these substantial business pursuits . . . . [w]e respectfully seek your Honor[']s indulgence to extend the time to conclude the deposition to December 8, 2004 at 3:00 p.m.

(Ltr. from Alexander Percheckly, Esq. to Judge Dolinger of 10/12/04 at 1.)  Judge Dolinger denied this request.  Notwithstanding Judge Dolinger's order, Sapir did not appear for his deposition on October 13.  Plaintiff responded with a motion for sanctions.

On March 3, 2005, Judge Dolinger issued a Memorandum & Order and the Report.  He ordered Sapir to appear for a deposition on March 15, 2005, and ordered him to pay the costs and attorney's fees associated with the sanctions motion.  Judge Dolinger directed Plaintiff's counsel to serve and file by March 15, 2005 an affidavit and time records documenting the costs and attorney's fees associated with making the sanctions motion, which Plaintiff's counsel did.  Sapir was afforded the opportunity to respond to the affidavit and time records by March 22, 2005, but did not.

In the Report, Judge Dolinger recommended that Sapir be precluded from testifying at trial on any matter pertaining to his liability for unlawful discrimination.[2]  The Report noted, "The implication of this ruling would be to establish, for purposes of trial, that gender- and pregnancy-based animus were substantial motivating factors in Sapir's decision to terminate plaintiff." (Report at 16.)  Judge Dolinger further recommended that the sanctions not preclude Defendants from presenting evidence through witnesses other than Sapir that Plaintiff would have been terminated even absent such unlawful discriminatory animus, suggesting that the defendants could raise a

---

[2] Judge Dolinger noted that the nonmonetary sanction was formulated as a recommendation because it amounted to an evidentiary ruling for trial purposes, while the monetary sanctions and direction to appear at the deposition were orders.

5

mixed-motive defense under Price Waterhouse v. Hopkins, 490 U.S. 228, 244-45 (1989) (holding that "once a plaintiff in a Title VII case shows that gender played a motivating part in an employment decision, the defendant may avoid a finding of liability only by proving that it would have made the same decision even if it had not allowed gender to play such a role").[3]

Sapir now objects that the number of hours Plaintiff's counsel spent on the sanctions motion—43.5 hours—is excessive. He also objects to the sanction of precluding his testimony at trial on the issue of Title VII liability.

## II. DISCUSSION

The Court reviews the order of attorney's fees under a "clearly erroneous or contrary to law" standard. See Fed. R. Civ. P. 72(a). The recommendation to preclude Sapir's testimony is reviewed de novo. Fed. R. Civ. P. 72(b).

### A. Recommended Sanctions

Rule 37(b) provides district courts with the power to impose sanctions for violations of discovery orders. Fed. R. Civ. P. 37(b); see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 695 (1982). The Rule states that the court "may make such orders in regard to the failure [to comply] as are just, and among others the following:. . . . (B) An

---

[3] In section 107 of the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1076, Congress responded to Price Waterhouse and codified standards applicable in mixed-motive cases. Landgraf v. USI Film Prods., 511 U.S. 244, 251 (1994). As a result of the 1991 legislation, a defendant can demonstrate that it "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e-5(g)(2)(B). However, the mixed-motive defense "does not absolve [a defendant] of liability, but restricts the remedies available to a plaintiff . . . . [to] include only declaratory relief, certain types of injunctive relief, and attorney's fees and costs." Desert Palace, Inc. v. Costa, 539 U.S. 90, 94 (2003). The recommendation would therefore contribute to a finding of Sapir's Title VII liability but not the relief to which Plaintiff is entitled under Title VII.

order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence . . . ." Fed. R. Civ. P. 37(b)(2). Rule 37(b) also permits the court to order a party, its attorney, or both to pay the reasonable attorney's fees caused by the failure to comply with a discovery order. Id.

District courts have broad discretion in imposing discovery sanctions. Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1365 (2d Cir. 1991). Because discovery under the Federal Rules of Civil Procedure is designed to function free from the delay and costs of court intervention, severe sanctions are appropriate "[w]hen a party seeks to frustrate this design by disobeying discovery orders." Id. Such severe sanctions may include dismissal of a party's case or entry of a default judgment. See Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976) (per curiam). As the Supreme Court has held, "the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize . . ., but to deter those who might be tempted to such conduct in the absence of such a deterrent." Id.

Like all discretionary powers, the power to sanction under Rule 37(b) is not unfettered. See Eastway Constr. Corp. v. City of New York, 821 F.2d 121, 123 (2d Cir. 1987) ("All discretion is to be exercised within reasonable limits. The concept of discretion implies that a decision is lawful at any point within the outer limits of the range of choices appropriate to the issue at hand . . . ."). District courts may only impose a sanction under Rule 37(b)(2) that is "just", and "the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery." Ins. Corp. of Ireland, 456 U.S. at 707. The Court concludes that the recommended sanctions of precluding Sapir's testimony and establishing that unlawful factors motivated Plaintiff' termination satisfy both requirements.

The history of Sapir's discovery abuse renders the proposed sanctions just. Sapir began his attempts in July 2002 to frustrate an expeditious and complete deposition. It was not unreasonable for Judge Dolinger to order Sapir to produce an affidavit and supporting documentation attesting to the theft of his passport. When Sapir produced only an unsworn affidavit and a police report without evidence that he had applied for a new passport while requesting another one-month adjournment, it was well within reason to conclude that he was in no hurry to return to the United States to be deposed. After this Court addressed the parties objections to Judge Dolinger's discovery rulings, Sapir again sought to impede discovery by contesting Plaintiff's right to continue his deposition and those of Epstein and Stein and seeking to stay discovery.

Sapir was warned multiple times that failure to comply with the order to appear for his deposition would result in sanctions. Undaunted by the repeated warnings and despite the fact that Sapir had requested October 13, 2004 as the date for his deposition, Sapir requested a two-month adjournment one day before the court-ordered deposition. His excuse was once again that he was simply too busy with his business abroad to attend. The fact that the letter was sent one day before the deposition strongly suggests that Sapir had no intention of returning from overseas to comply with the order; if Sapir was still overseas as the letter suggested, it would have been improbable for him to be able to return to the United States in time for the deposition. The language of his counsel's letter made clear that Sapir considers compliance with court orders as a secondary priority to his "complex" business transactions.[4] Indeed, Sapir's counsel actually suggested that Sapir was given

---

[4] The Court notes that Sapir's counsel at the time of the October 12, 2004 letter was a member of the in-house counsel's office at ZAR Realty, and thus answerable directly to Sapir as sole shareholder and chief executive officer of the corporation. Sapir has now had at least three different attorneys represent him in this action, the latest of which was apparently retained sometime after Plaintiff filed the sanctions motion.

short notice of the deposition, despite the fact that Sapir himself had requested the date. The foregoing facts suggest that when Sapir ultimately did not appear on October 13, 2004, he did so willfully and in bad faith.

Sapir's contentions to the contrary ring hollow. He argues that he did not intentionally resist appearing for his deposition, but in fact appeared on October 15, 2002. This point ignores two facts. First, Sapir only appeared in 2002 after delaying the deposition, ignoring Judge Dolinger's order to substantiate his claim that his passport was stolen, and the fortuitous intervention of a change in Plaintiff's counsel. Second, the fact that he eventually appeared in 2002 is irrelevant to his failure to appear in 2004, in direct contravention of a court order. Judge Dolinger determined that Plaintiff did not have a full opportunity to depose Sapir because of the discovery disputes that arose, and this Court denied Sapir's attempt to stall his continued deposition. Thus, Sapir deserves no reward for appearing in 2002 when he actively resisted the attempts to have him complete the deposition.

Sapir also argues that the failure to appear in October 2004 was not a willful disregard of a court order because Sapir had offered to complete the deposition by video or telephone conference while he was abroad. Whether or not that offer was made, it cannot justify Sapir's conscious decision not to appear for a deposition that was court-ordered in spite of numerous warnings that failure to appear would trigger sanctions. "Willful" means "done deliberately" or "intentional," Webster's Ninth New Collegiate Dictionary 1350 (1985); that Sapir may have offered alternatives to an in-person deposition that were not accepted by the Court does not make his decision to violate Judge Dolinger's order any less deliberate.

The severity of the sanctions also do not make them unjust. The Second Circuit, like the Supreme Court, has recognized the necessity of imposing severe sanctions in appropriate

circumstances.  See, e.g., Update Art, Inc. v. Modiin Publ'g, 843 F.2d 67, 70-71 (2d Cir. 1988); Daval Steel, 951 F.2d at 1363-64.  In Update Art, the Second Circuit held that "although preclusion of evidence and dismissal of the action are harsh remedies and should be imposed only in rare situations, they are necessary to achieve the purpose of Rule 37 as a credible deterrent rather than a 'paper tiger'."  843 F.2d at 71 (internal quotation marks omitted).  The court there, in upholding the preclusion of evidence by the defendants, cited the numerous opportunities that the magistrate and district judges had provided the defendants to produce documents responsive to valid discovery requests and the warnings that the defendants had received prior to being sanctioned.  See id. at 72.

Similarly, in Daval Steel, the district court prohibited a defendant from presenting evidence on an issue of liability because the defendant corporation violated a court order to comply with a subpoena duces tecum to produce a witness, together with appropriate documents, at a deposition. See 951 F.2d at 1361-62.  The defendant produced a witness but withheld the documents demanded in the subpoena.  Id. at 1361.  In upholding the sanctions, the Second Circuit held that "[s]evere sanctions are justified . . . when failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable."  Id. at 1367.  Preclusion of evidence was warranted because of the defendant's willful violation of the discovery order and its prior obstruction of discovery.  Id.

As in Update Art and Daval Steel, the imposition of harsh sanctions is warranted.  Sapir has attempted to impede discovery in this matter for much of the unusually protracted discovery period. He has repeatedly indicated to the Court that he believes court-imposed deadlines and dates must yield to his business affairs abroad.  And both Judge Dolinger and this Court warned Sapir that continued obstruction of Plaintiff's attempts to depose him would result in sanctions.  His failure to appear on October 13, 2004 to complete the deposition came one day after Judge Dolinger denied

yet another adjournment, apparently while Sapir was still abroad, signifying his intent not to appear at the October 13 deposition in the event that an adjournment was denied. In short, Sapir "rolled the dice on the district court's tolerance for deliberate obstruction, and [he] lost." Bambu Sales, Inc. v. Ozak Trading, Inc., 58 F.3d 849, 853 (2d Cir. 1995).

Finally, Sapir argues that the sanctions are overly prejudicial, but the prejudice to Sapir is justified under the circumstances. Rule 37(b) sanctions are not merely meant to force recalcitrant parties to cooperate in the discovery process; they serve punitive and deterrent purposes as well. See Nat'l Hockey League, 427 U.S. at 643. Sapir's conduct is deserving of punishment and demands a strong response from the Court, lest other parties who come upon this case mistake leniency for tolerance and willful disregard of proper court orders for anything other than antithetical to the effective administration of justice. The proposed sanction is certainly exacting, but it is necessary to instruct Sapir, other litigants, and the bar that federal courts do not lightly treat willful violations of their orders. For these reasons, Sapir's ultimate appearance on March 15, 2005 does not render stiff sanctions inappropriate.

There is also little doubt that the sanctions are tied to the claims for which discovery was sought. Plaintiff contends that she was fired in 2001 because she is a woman and because she was pregnant at the time, in violation of Title VII and New York State and City laws. She sought to complete the deposition of her employer Sapir who fired her, in part, to address whether he had acted on an animus towards those protected classes. Precluding evidence on the issue of whether Sapir was motivated by Plaintiff's gender and pregnancy is therefore directly tied to the evidence that Plaintiff sought to obtain in deposing Sapir.

    **C.**     **Scope of the Preclusion**

11

The Court finds it necessary to clarify one aspect of the sanctions. Plaintiff has alleged five claims against Defendants, three of which depend on a finding that Plaintiff was terminated based on her gender and pregnancy. The remaining two claims depend on different facts—whether Plaintiff's termination was a breach of a valid employment contract and whether Plaintiff is entitled to unpaid wages under New York law. The Report only recommends establishing liability as to the Title VII and state and local discrimination claims. On the breach-of-contract and wage-withholding claims, Sapir is not precluded from testifying and liability remains a contestable issue. In addition, Plaintiff requested a premotion conference pursuant to this Court's individual practices at which she would like to set a briefing schedule on a motion for summary judgment. The sanctions imposed against Sapir will apply equally to a motion for summary judgment as to the presentation of evidence at trial.

### D.     Order of Attorney's Fees

Sapir objects that 43.5 hours are excessive for Plaintiff's counsel to have spent on the motion for sanctions. He requests a hearing on the matter. However, Judge Dolinger provided Sapir with the opportunity to respond to the affidavit of Plaintiff's counsel by March 22, 2005. Consistent with Sapir's contempt for court-imposed deadlines, he failed to do so. His belated request for a hearing is therefore denied. Judge Dolinger has not yet issued an order setting forth the total award of attorney's fees and costs; he should of course reduce the requested attorney's fees if he finds them unreasonable. See Fed. R. Civ. P. 37(b)(2) (providing for an award of reasonable attorney's fees as a sanction for violating a discovery order). Rule 72(a) provides Sapir 10 days from the date he is served with such an order to file objections. Although the Court will not preclude Sapir from filing objections to the order once issued, Sapir is forewarned that any objection will be considered in light

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-20-05

of his disregard of Judge Dolinger's deadline.

### III. CONCLUSION

For the foregoing reasons, Sapir's objections are denied and the Report is adopted with the modification stated herein. The Court shall deem it established for the purposes of any dispositive motion and trial that Plaintiff's pregnancy and gender were substantial motivating factors in the decision to terminate her. Furthermore, Sapir will be precluded from testifying regarding his liability under Title VII and the analogous state and local statutes. He will not be barred from testifying, nor is liability established, on Plaintiff's claims of breach of contract and withholding of wages. Finally, nothing in this decision imposes sanctions on any defendant other than Sapir. The entity Defendants remain free to contest liability on all five claims at trial or in opposition to a motion for summary judgment.

**So Ordered:**  New York, New York
April 19, 2005

_____
**Richard Conway Casey, U.S.D.J.**